UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRIA HEINEMEIER, SPECIAL ADMINSTRATOR OF THE ESTATE OF KATIE L. BUNT, deceased,<br><br>              Plaintiff,<br><br>vs.<br><br>CITY OF ALTON, POLICE CHIEF JAKE SIMMONS, and OFFICER WILLIAM J. REED,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 3:18-cv-2005-GCS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Plaintiff Andria Heinemeier, the Special Administrator of the Estate of Katie L. Bunt, deceased, brings an action under 42 U.S.C. § 1983 against Defendants the City of Alton, Police Chief Jake Simmons, and Officer William Reed. Before the Court is Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 56). Based on the reasons delineated below, this Court **GRANTS** Defendants' motion for summary judgment.

### FINDINGS OF FACTS

Plaintiff's decedent, Katie Bunt, was a friend of Kelsey Barnes. (Doc. 57-2, p. 11:4-18). Before the events leading to this suit, Barnes was in a relationship with Caleb Lenhardt. (Doc. 57-2, p. 12:3-7). After Lenhardt became abusive, Barnes acquired an order of protection against Lenhardt that was in full force and effect on July 21, 2018, and July 22, 2018. (Doc. 31, ¶5; Doc. 57-2, p. 29:12-17). The order of protection prohibited

Lenhardt from knowingly being within 300 feet of Barnes. (Doc. 31-4, p. 27:6-8). Prior to the events of July 21, 2018, and July 22, 2018, an acquaintance of Lenhardt's claimed Lenhardt tried to run him over with his vehicle. (Doc. 57-4, p. 32:22-25, 33:1-11).

On July 21, 2018, at 10:45 PM, Barnes and her friends Haily Fredrick and Ashely Allgood went to Mac's Time Out bar ("Mac's") in downtown Alton, Illinois. (Doc. 57-2, p. 12:14-19; Doc. 57-5, p. 9:21-25). Upon entering Mac's, Barnes saw Lenhardt. (Doc. 57-2, p. 14:11-24). After realizing Barnes was in Mac's, Lenhardt left. (Doc. 31-2, p. 17:7-18). While leaving in a vehicle, Lenhardt made an obscene gesture at Barnes and told her that if she was not going to leave the bar he was coming back. (Doc. 57-2, p. 17:7-18; Doc. 57-7, p. 4).

Later that night, Barnes, Fredrick, and Allgood entered another bar. (Doc. 57-5, p. 12:4-9). As they were leaving, they saw Lenhardt and his friends arriving. (Doc. 57-5, p. 13:8-14). An argument between Barnes's friends and Lenhardt's friends ensued. (Doc. 57-5, p. 13:11-16). When the argument ended, Barnes walked to her vehicle with Allgood and called the Alton Police Department. (Doc. 57-3. P. 26:4-18; Doc. 57-7, p. 1). Barnes informed the dispatcher that Lenhardt was following her from bar to bar and had contacted her. (Doc. 57-7, p. 1).

Four officers, including Officer William Reed, responded to the call. (Doc. 57-2, p. 23:16-19; Doc. 57-4, p. 16:6-24). Officer Reed spoke to Barnes. (Doc. 57-7, p. 4). Barnes informed him that she and Lenhardt were at Mac's and that Lenhardt left when he discovered she was there. (Doc. 57-7, p. 4). Barnes stated that later she saw Lenhardt making an obscene gesture at her while he was leaving in a vehicle. (Doc. 57-7, p. 4).

Barnes showed Officer Reed a video on her phone of the incident. (Doc. 31-7, p. 4). Officer Reed could hear Barnes yelling at a vehicle in the video but was unable to determine if Lenhardt made an obscene gesture. (Doc. 57-7, p. 4).

Barnes then told Officer Reed that she and her friends went to another bar. (Doc. 57-7, p. 4). She explained that as they were leaving, she saw Lenhardt and his friends entering the bar. (Doc. 57-7, p. 4). Barnes stated that an argument began between the two groups, but Barnes could not hear what Lenhardt was saying. (Doc. 57-7, p. 4).

As Officer Reed spoke to Barnes, Barnes spotted Lenhardt. (Doc. 57-7, p. 5). Officer Reed approached Lenhardt and began questioning him. (Doc. 57-7, p. 5). Lenhardt expressed surprise when he learned Barnes was still in the area and denied that he was following her. (Doc. 57-7, p. 5). He told Officer Reed that he initially did not know Barnes was in Mac's and left as soon as he learned she was there to avoid problems. (Doc. 57-7, p. 5). Lenhardt stated that later he saw Barnes exiting Mac's and believed she was going to her car and leaving the area. (Doc. 57-7, p. 5). He admitted that at another bar an argument began between his friends and Barnes's friends. (Doc. 57-7, p. 5).

Based on his investigation, Officer Reed determined that he did not have probable cause to arrest Lenhardt. (Doc. 57-7, p. 5). Officer Reed believed that the contacts between Barnes and Lenhardt were inadvertent. (Doc. 57-7, p. 5). He noted that Barnes did not claim that Lenhardt attempted to speak to or detain her in any way, nor could he determine if Lenhardt had made an obscene gesture at Barnes. (Doc. 57-7, p. 5). Officer Reed assumed that the downtown area was large enough that Lenhardt and Barnes could visit establishments while remaining 300 feet away from each other. (Doc. 57-7, p. 5).

Officer Reed told Lenhardt that it would be in his best interest to leave the area and patronize another bar in another town. (Doc. 57-7, p. 5). As Lenhardt walked away, Officer Reed heard him say that he was going to a nearby bar. (Doc. 57-7, p. 5). Officer Reed returned to Barnes and explained that her encounters with Lenhardt were likely accidental because it was a public area. (Doc. 57-7, p. 6). He informed her that if she discovered more evidence charges could be brought later. (Doc. 57-7, p. 6). Before leaving, Officer Reed warned Barnes that Lenhardt was not leaving the area. (Doc. 57-7, p. 6). In his report, Officer Reed wrote that he told Barnes that she should consider leaving the area to avoid future conflict. (Doc. 57-7, p. 6). In her deposition, Allgood testified that Officer Reed did not tell them to leave but said that both groups should go their separate ways. (Doc. 57-2, p. 26:3-21).

At some unspecified time, Katie Bunt joined Barnes. Later, an altercation occurred between Lenhardt and Barnes. Lenhardt then drove his car through a crowd of people, killing Katie Bunt.

Plaintiff filed suit against three defendants: Officer Reed, Police Chief Simmons, and the City of Alton. On December 14, 2018, Plaintiff filed her second amended complaint, which included three counts. (Doc. 31). On June 19, 2019, this Court dismissed Count I, a state law claim, and allowed Counts II and III to proceed. (Doc. 50). Defendants filed their motion for summary judgment on October 17, 2019. (Doc. 56).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute

as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine dispute of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). The Seventh Circuit has explained that Rule 56(a) requires that, "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [her] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [her] favor." *Spaine v. Community Contracts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## ANALYSIS

Count II of Plaintiff's amended complaint seeks to hold Officer Reed liable for violating Bunt's due process rights under the "state-created danger" doctrine. Here, no reasonable jury could find that Officer Reed committed affirmative acts that created or increased the danger to Bunt. In addition, Officer Reed's purported failure to protect was not the proximate cause of Bunt's death, nor did such a failure to protect "shock the conscience." As such, this Court concludes that Defendants are entitled to summary judgment on Count II.

Count III of Plaintiff's amended complaint seeks to hold the City of Alton and Police Chief Simmons liable for failing to train Officer Reed properly on how to handle domestic violence situations and order of protection violations.  Because Plaintiff presents no evidence that Defendants are deliberately indifferent in their training of police officers, this Court concludes that Defendants are entitled to summary judgment on Count III.

I.      **Count II: State-Created Danger**

In Count II, Plaintiff argues that Officer Reed's "acts and omissions" placed Bunt in a "state created danger" in violation of her due process rights.  (Doc. 31, p. 5, ¶25).  The Court disagrees.

The Due Process Clause generally does not require the Government to protect individuals from private violence.  *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  Rather, "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  *Id.*  at 195.

However, the Seventh Circuit recognizes a "narrow" exception to this general rule: the state-created danger doctrine.  *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015).  Under the state-created danger doctrine, a plaintiff may bring a substantive due process claim when the State "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."  *Wilson-Trattner v. Campbell*, 863 F.3d 589, 593 (7th Cir. 2017)(quoting *Arlington Heights*, 782 F.3d at 916).  To succeed under this doctrine, a plaintiff must show "(1) the state by its affirmative acts created or increased a danger to her, (2) the state's failure to protect her from danger was

the proximate cause of her injury and (3) the state's failure to protect her shocks the conscience." *Id.* (citing *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015)). To underscore the narrowness of this doctrine, however, the Seventh Circuit has noted that it applies "only in 'rare and often egregious' circumstances." *Id.* (citing *Arlington Heights*, 782 F.3d at 917)(quoting *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003)).

Plaintiff's claim fails on all three prongs. First, Plaintiff does not point to any affirmative act by Officer Reed that increased the danger Lenhardt posed to Bunt. "When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 600 (7th Cir. 2008). In the Seventh Circuit, liability under the state-created danger doctrine occurs in "rare and often egregious" cases where "the plaintiff was safe, or at least considerably safer, before the police acted than he or she was thereafter." *Arlington Heights*, 782 F.3d at 917.

For example, in *Reed v. Gardner* the Seventh Circuit imposed liability under the state-created danger doctrine on police officers who arrested a sober driver and left behind his obviously intoxicated passenger with the vehicle's keys who later caused an accident. *See Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993). In contrast, in *Doe v. Village of Arlington Heights*, the Seventh Circuit refused to find a police officer liable under the state-created danger doctrine when the officer responded to a call about three males and a female drinking heavily, observed that the female was so intoxicated that she could

not stand up on her own or keep her eyes open, and left after quickly speaking with the three males. *See Arlington Heights*, 782 F.3d at 913. The officer did not ask for identification, which would have informed him that the female and two of the males were minors, and called off another officer who was responding to the scene. *Id.* One of the males later sexually assaulted the female. *Id.* The Seventh Circuit reasoned that because "[the officer's] alleged conduct did not turn a potential danger into an actual one; [the female] was in actual danger already . . . ." the state-created danger doctrine did not apply. *Id.* at 918.

The present case is far more similar to *Arlington Heights* than *Reed*. The record discloses that Officer Reed questioned both Barnes and Lenhardt, determined he had no probable cause to arrest Lenhardt, and advised both parties to go their separate ways. None of these acts increased the danger Lenhardt posed to Bunt. Like the officer in *Arlington Heights*, and unlike the officers in *Reed*, Officer Reed left Lenhardt and Barnes precisely as he found them. As expressed in Seventh Circuit caselaw, this conduct, which had little to no impact on those at the scene, cannot be characterized as increasing danger. Plaintiff implies that Officer Reed is liable because he should have arrested Lenhardt or ensured he stayed away from Barnes, but such an argument "erase[s] the essential distinction between endangering and failing to protect." *Sandage,* 548 F.3d at 599. Without evidence of an affirmative act by Officer Reed that turned a potential danger into an actual one, no reasonable jury could find him liable.

Second, Officer Reed's actions were not the proximate cause of Bunt's death. In the state-created danger context, the plaintiff must have been a foreseeable victim of the

state's acts. *See King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007)(citing *Kneipp v. Tedder*, 95 F.3d 1199, 1209 n. 22 (3rd Cir. 1996)). *See also Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009)(stating that "[Plaintiffs'] complaint must allege facts suggesting that the County's conduct was the proximate cause of [decedent's] death; that is, [decedent] must have been a foreseeable victim of the county's acts."). However, Officer Reed never saw Bunt, who met Barnes sometime after Officer Reed concluded his investigation. During his investigation, Officer Reed knew Lenhardt had interacted with Barnes and may have made an obscene gesture at her, but nothing suggested Lenhardt would ram his vehicle into a crowd of people and kill Bunt. Plaintiff contends Officer Reed was or should have been aware Lenhardt attempted to run over an acquaintance with a vehicle. Yet, even if Officer Reed possessed this information, his interaction with Lenhardt did not indicate that Lenhardt would later use his vehicle to kill Bunt. Thus, no reasonable jury could find that Officer Reed's acts proximately caused Bunt's death.

Finally, Officer Reed's conduct does not "shock the conscience." Conduct that "shocks the conscience" typically "requires a culpable state of mind equivalent to deliberate indifference." *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019)(citing *King*, 496 F.3d at 819). Mere negligence will not support liability under the state-created danger doctrine. *See King*, 496 F.3d at 819.

Far from being deliberately indifferent, the record reveals that Officer Reed conducted an appropriate investigation. He questioned Barnes and Lenhardt, advised both groups to go their separate ways, and warned Barnes that Lenhardt intended to stay

in the area. Plaintiff has not provided proof that, if believed, Officer Reed acted with deliberate indifference.

In summation, this Court finds summary judgment is appropriate on Count II because no reasonable jury could find the necessary elements to support a claim under the state-created danger doctrine.[1]

## II. Count III: Failure to Train

In Count III, Plaintiff claims that "the City of Alton adopted policies in which they failed to train Police Officers to arrest individuals who have violated valid orders of protection . . . [and] failed to supervise officers." (Doc. 31, ¶¶29-30). The Supreme Court has instructed that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Here, Plaintiff presents no evidence that the City of Alton and Police Chief Simmons failed to train their police officers in situations involving protective orders and domestic violence. In fact, the record supports the opposite conclusion. Officer Reed, an Alton police officer, conducted an appropriate investigation of a potential protective order violation. Defendants are thus entitled to summary judgment on Count III.

---

[1] It is unclear if Plaintiff is also asserting a claim against the City of Alton and Police Chief Simmons under the state-created danger doctrine. If so, for the same reasons no reasonable jury could find Officer Reed liable under the state-created danger doctrine, summary judgment on Count II for the City of Alton and Police Chief Simmons is also warranted.

This Court is obviously saddened by Katie Bunt's tragic death. Yet, in this case, responsibility rests with the individual who senselessly killed her.

## CONCLUSION

For the above-stated reasons, this Court **GRANTS** Defendants' motion for summary judgment (Doc. 56) and **FINDS as moot** the motion to supplement (Doc. 75). The Court **FINDS** in favor of the City of Alton, Police Chief Jake Simmons, and Officer William Reed and against Andria Heinemeier, the Special Administrator of the Estate of Katie L. Bunt, deceased, on Counts II and III of the amended complaint. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Dated: **June 12, 2020.**

Digitally signed by Judge Sison
Date: 2020.06.12 14:17:53 -05'00'

_____
**HON. GILBERT C. SISON**
**United States Magistrate Judge**